## IN THE UNITED STATE DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **SHAWNELL RYAN,** | : | **Civil Action No. _____** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **WATSONTOWN TRUCKING** | : | |
| **COMPANY,** | : | |
| | : | |
| **Defendant** | : | *ELECTRONICALLY FILED* |

## COMPLAINT

Plaintiff, Shawnell Ryan ("Ms. Ryan"), a resident of Hedgesville, West Virginia, by and through her attorneys, brings this civil action for damages against the above named Defendant, Watsontown Trucking Company ("Watsontown"), demands a trial by jury, and complains and alleges as follows:

## JURISDICTION AND VENUE

1.     Jurisdiction of the claims set forth in this Complaint is proper in this judicial district pursuant to 28 U.S.C. §§1331, 1343 and 1367.

2.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to these claims occurred in this judicial district.

## THE PARTIES

3.     Ms. Ryan is an adult individual residing in Hedgesville, West Virginia.

4.     Defendant Watsontown is a Pennsylvania corporation with a primary business location at 60 Belford Boulevard, Milton, Northumberland County, Pennsylvania.

5.     At all times relevant to this Complaint, Watsontown employed in excess of fifteen (15) individuals and was engaged in the business of interstate trucking.

## ADMINISTRATIVE PROCEEDINGS

6.     On or about April 7, 2016, Ms. Ryan filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was docketed as Charge No. 530-2016-02372.

7.     The EEOC referred the matter to the Pennsylvania Human Relations Commission ("PHRC") for purposes of dual filing.

8.     Ms. Ryan has been advised of her right to sue in federal court, which notice was received on or about September 5, 2017.

9.     All necessary and appropriate administrative prerequisites to this action have occurred.

## STATEMENT OF FACTS

10.     Ms. Ryan was hired to work as a truck driver for Watsontown in or about February 2012.

11.     Beginning in or around September 2013, and continuing until her termination in or about January 2017, Ms. Ryan was subjected to discrimination and harassment because of her female gender by male co-workers, supervisors and managers of Watsontown.

12.     In 2012, Ms. Ryan was team driving with her now ex-husband David Ryan.

13.     By August 2013, Ms. Ryan had separated from her husband, at which time Ms. Ryan began getting sexual comments aimed at her.

14.     The sexual harassment began in or around September 2013, when Ms. Ryan was in the office and the Senior Safety Instructor, John Shires, started making indecent comments to Ms. Ryan and talking about taking her out.  Ms. Ryan repeatedly told Mr. Shires that she was not interested.  Nonetheless, these kinds of comments continued to be directed towards Ms. Ryan at an alarming rate.

15.     In or about September 2013, while Ms. Ryan was at her friend's home, the Safety Director, Gerald Woolcock, tried to kiss her.  Ms. Ryan stepped back, and told Mr. Woolcock that she was not interested any kind of

relationship with him.   Following that event, Mr. Woolcock began to retaliate Ms. Ryan.   Mr. Woolcock called Ms. Ryan into the office the following week, and Ms. Ryan was reprimanded on various subjects based upon false accusations.   Mr. Woolcock also attempted to suspend Ms. Ryan for three days and called her into his office almost daily thereafter.   Ms. Ryan was reprimanded for normal business activities such as doing safety training while on duty (which is DOT regulation), scanning her trip papers and getting information regarding her physical.   Ms. Ryan continued to be harassed in a hostile manner by Mr. Woolcock until his departure in 2015.

16.   In or about October 2013, Ms. Ryan began dating one of the dispatchers at Watsontown Trucking who was not her dispatcher or manager, and the sexual and indecent comments from other male employees rapidly increased.   In or about November of 2013, while Ms. Ryan was off site at a local bar, Chris Patton (General Manager), Brandon Koser (Dispatcher), and Chad Mensch (Safety Director) came in to the same bar. Ms. Ryan was standing at the dividing wall between the pool tables and bar when Chris Patton became very physically aggressive and reached into Ms. Ryan's shirt and pulled out her left breast while whispering into her left ear, "Don't forget who your boss is."   Ms. Ryan tried to slap Mr. Patton's hands away, and he continued to force his hand down into Ms. Ryan's bra and

removed her breast.  Ms. Ryan quickly replaced her breast into her shirt and turned to get her coat when Mr. Koser cornered her and proceeded to reach into her pants.  Ms. Ryan pulled Mr. Koser's hand out and left the bar.

17.     In or around December 2013, there was an informal Watsontown Trucking gathering at the Bull Run Inn in Lewisburg.  Steve Patton (Owner), Chris Patton, Brandon Koser, Chad Mensch, Ed Ferguson (Driver Recruiter), and others were in attendance.  In view of Watsontown Trucking employees and many other patrons within the area, Steve Patton went up to Ms. Ryan and announced to her that, "Ever since we hired you I've wanted to do this…," and proceeded to grab Ms. Ryan's breasts, tweaked them and then placed his face between her breasts and blew his mouth on them.

18.     In or around February 2014, Ms. Ryan became engaged, and she started receiving more comments from John Shires, Ben Kline, Chris Patton and Brandon Koser.  Ms. Ryan tried to withstand the comments as long as she could just to avoid retaliation, and after Ms. Ryan had taken all she could she then brought it to her fiancé's attention.  Ms. Ryan's fiancé addressed the parties at work and for a short time, it ceased.  By April 2014, Ms. Ryan had separated and cancelled the engagement, and at that point Ms. Ryan once again began to be harassed and false accusations were made

regarding her work performance.  Ms. Ryan was further retaliated against by having her pay reduced.

19.    On or about August 9, 2014, Ms. Ryan attended an official Watsontown Trucking Safety Meeting where there were over one hundred employees in attendance.  In front of a large crowd, John Shires asked if Ms. Ryan was going to be in attendance at the truck rodeo in September that year.  Ms. Ryan said she would and then he asked if Ms. Ryan would be in the "Dunking Booth," to which Ms. Ryan answered that she would not.  Mr. Shires then looked at Ms. Ryan's breasts and said, "we all wanted to know if those float" (pointing at her breasts).  The whole table then broke out in laughter at Ms. Ryan, causing Ms. Ryan to be extremely embarrassed.  To try and get the males focus off of her chest, Ms. Ryan had a dermal piercing put in next to her left eye as to draw attention away from her breasts and back up to her eyes.  Ms. Ryan had hoped this would help stop the gawking and comments.

20.    In or around October 2015, while Ms. Ryan was in the office speaking with Ben Kline about her pre-scheduled run for the following day, Mr. Kline asked Ms. Ryan, "Is David tapping that?"  Ms. Ryan asked Ben what he meant by "tapping that," and he said "you know screwing, are you

two screwing again?"  Ms. Ryan looked Mr. Kline in the eye and told him she did not feel comfortable with that kind of talk and was leaving.

21.    In or about January 2016, Ms. Ryan was in the safety office when John Shires walked in from the adjacent orientation room and started making crude comments about how Ms. Ryan had hurt her left knee (Ms. Ryan had fallen down the front steps of her porch).  Mr. Shires asked, "Did you hurt it by wrapping it around David's head?" and followed by rapidly thrusting his hips in an indecent sexual manner.

22.    In or about February 2016, Ms. Ryan was retaliated against by Jeff Sampsell, who spoke to her in an aggressive and threatening manner. Because of Mr. Sampsell's behavior, Ms. Ryan had a meeting with Aly Patton, the owner's daughter who had begun working in the office.  Rather than take any steps to address these issues, Ms. Patton took steps to isolate Ms. Ryan from her few friends in the office.  Ms. Ryan was told by one of her friend at work a few days later that she could no longer be Ms. Ryan's friend or associate with her due to the fact of the friend's job being threatened.

23.    The harassment continued, and every time Ms. Ryan walked into the office, she received sneers and jeers.  Ms. Ryan was made to feel small and dirty. Ms. Ryan continued to do her job as a professional and

maintain a professional behavior when dealing with all Watsontown Trucking Personnel.

24.    In January 2017, while Ms. Ryan was off work due to a work-related injury, Ms. Ryan's employment was terminated by Watsontown.

25.    Defendant's sexual harassment and discrimination violated Ms. Ryan's rights under Title VII of the Federal Civil Rights Act of 1964 and the Pennsylvania Human Relations Act.

## COUNT I
## (SEXUAL DISCRIMINATION AND HARASSMENT)

26.    The averments of Paragraphs 1 through 25 above are incorporated by reference as though fully set forth herein.

27.    Watsontown created, permitted, tolerated, encouraged and fostered a sexually hostile, intimidating, demeaning, degrading and demoralizing environment, which hostile environment was ongoing and pervasive throughout the majority of Ms. Ryan's employment.  The acts of Watsontown, and its officers, agents and employees manifesting this hostile environment, insofar as they are known to Ms. Ryan, included:

    a)    making crude and graphic sexual remarks towards Ms. Ryan and other women;

    b)    continually making unwanted sexual advances towards Ms. Ryan, including unwanted touching; and

c)      using foul and salacious language and permitting the use thereof.

28.     The hostile sexual environment was known to Watsontown's managers and owners, who took no meaningful or effective action to terminate the offending behavior, to remove the offending environment or to discipline the offensive employees.

29.     As a consequence of the hostile environment supported and encouraged by Watsontown's actions and failures to act, Ms. Ryan was subjected to emotional distress, humiliation, ridicule and a negative effect on her work product and ability to fully and effectively perform her job duties and responsibilities, all of which manifested itself in mental and physical distress, injury and damage.

30.     As a result of the sexually hostile environment Ms. Ryan has suffered emotional distress, physical injury, a loss of self-respect and confidence, and has been subjected to great damage to her career and professional standing.

31.     The actions of Watsontown set forth above constitute violations of Title VII of the Civil Rights Act, 42 U.S.C. §2000e et seq. (as amended) and the Civil Rights Act of 1991.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in her favor and against Defendant, together with compensatory damages, punitive damages, reasonable attorneys' fees and costs, and any such other relief as this Honorable Court deems just and appropriate, which total amount exceeds the jurisdictional limits for mandatory arbitration referral.

## COUNT II
## (RETALIATION AND WRONGFUL TERMINATION)

32.     Paragraphs 1 through 31 above are incorporated herein by reference as if more fully set forth at length.

33.     Ms. Ryan's termination in January 2017 was based in whole, or in part, on Ms. Ryan's gender and/or in retaliation for Ms. Ryan's prior complaints of gender discrimination and sexual harassment.

34.     Watsontown's termination of Ms. Ryan has caused her to suffer a loss of earnings as well as emotional distress, physical injury, a loss of self-respect and confidence, and she has been subjected to great damage to her career and professional standing.

35.     The actions of Watsontown set forth above constitute violations of Title VII of the Civil Rights Act, 42 U.S.C. §2000e et seq. (as amended) and the Civil Rights Act of 1991.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in her favor and against Defendant, together with compensatory damages, punitive damages, reasonable attorneys' fees and costs, and any such other relief as this Honorable Court deems just and appropriate, which total amount exceeds the jurisdictional limits for mandatory arbitration referral.

### COUNT III
### (PHRA Allegations)

36.     Paragraphs 1 through 35 above are incorporated herein by reference as if more fully set forth at length.

37.     This is an action arising under the provisions of the Pennsylvania Law, to wit, Title 42 P.S. §951, et seq. (the "Pennsylvania Human Relations Act") and this Court has, and should exercise, pendant jurisdiction over the same because the cause or action complained of in this Count III arises out of the same facts, events and circumstances as Count I and II and therefore judicial economy and fairness to the parties dictates that this Count be brought in the same Complaint.

38.     By engaging in the creation and fostering of a sexually hostile environment, Watsontown, violated the provisions of Title 43 P.S. §955 which prohibit discrimination and harassment based upon sex.

39.     As more fully set forth in Counts I and II, Ms. Ryan has suffered directly and solely as a result of Watsontown's action, great pecuniary loss, damage and harm and will continue to suffer the same for the indefinite future.

WHEREFORE, Plaintiff, Shawnell Ryan, respectfully prays that judgment be entered in her favor and against the Defendant, Watsontown Trucking Company, for all of the relief sough in Counts I and II, <u>supra</u>, and such other and further relief provided by the Pennsylvania Human Relations Act, together with an award of attorneys' fees and costs of suit.

## **<u>DEMAND FOR JURY</u>**

Pursuant to Federal Rule of Civil Procedure 38(b) and otherwise, Plaintiff respectfully demands a trial by jury.

Respectfully submitted,

McCarthy Weisberg Cummings, P.C.

September 12, 2017                    /s/ Larry A. Weisberg
Date                                 Larry A. Weisberg, Esquire
                                     PA Bar I.D. #: 83410
                                     lweisberg@mwcfirm.com

                                     Derrek W. Cummings, Esquire
                                     PA Bar I.D. #: 83286
                                     dcummings@mwcfirm.com

                                     Stephen T. Mahan, Jr., Esquire
                                     PA Bar I.D. #:  313550
                                     smahan@mwcfirm.com

                                     2041 Herr Street
                                     Harrisburg, PA 17103-1624
                                     (717) 238-5707
                                     (717) 233-8133 (FAX)

                                     Attorneys for Plaintiff